Filed in Open Court
02/17/2026
Skyler B. O'Hara
By M. Garrett
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

   Plaintiff,

v.                                                    Case No. 22-20032-DDC-01

ERNEST LUCAS,

   Defendant.

PLEA AGREEMENT PURSUANT TO FEDERAL RULE
OF CRIMINAL PROCEDURE 11(c)(1)(C)

The United States of America, by and through Assistant United States Attorney Michelle McFarlane, Ernest Lucas, the defendant, personally and with his counsel, Paul Hood, hereby enter into the following plea agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure:

1. **Defendant's Guilty Plea.** The defendant agrees to plead guilty to Count 1 of the Third Superseding Indictment charging a violation of 21 U.S.C. § 846 and 21 U.S.C. 841(a)(1)&(b)(1)(A)(viii), that is, Conspiracy to Distribute and Possess with Intent to Distribute More than Fifty Grams of Methamphetamine. By entering into this plea agreement, the defendant admits to knowingly committing the offense, and to being guilty of the offense. The defendant understands that the maximum sentence which may be imposed as to Count 1 of the Third Superseding Indictment to which he has agreed to plead guilty is not less than ten years and not more than life imprisonment, a $10,000,000 [strikethrough: $10,000] fine, not less than five years of supervised release, and a $100.00 mandatory special assessment. The defendant further agrees to forfeit property or money to the United States, as agreed.

2. **Factual Basis for the Guilty Plea.** The parties agree the facts constituting the offense to which the defendant is pleading guilty are as follows:

Beginning in February 2022, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and others started an investigation into criminal activity and methamphetamine trafficking in the Kansas City, Kansas area. An ATF source of information (SOI) provided information that Chaz Hicks was distributing large amounts of methamphetamine.

An ATF undercover officer (UC) purchased methamphetamine from Hicks on April 21, 2022, April 28, 2022, May 10, 2022, and May 25, 2022. On April 21, 2022, the UC purchased two ounces (approximately 56 grams) of 100% pure methamphetamine from Hicks at a location in Kansas City, Kansas. Hicks has a black Glock pistol with an extended magazine in his lap during this buy. On April 28, 2022, the UC purchased two ounces (approximately 57 grams) of 100% pure methamphetamine from Hicks at a location in Kansas City, Kansas. On May 10, 2022, the UC purchased ¼ pound (approximately 90.4 grams) of 100% pure methamphetamine from Hicks at a location in Kansas City, Kansas. Hicks had a Glock pistol on his lap during this buy. On May 25, 2022, the UC purchased approximately 180 grams of 100% pure methamphetamine from Hicks at a location in Kansas City, Kansas. Hicks had a Glock pistol on his lap during this buy. All methamphetamine purchased from Hicks was lab tested and confirmed to be methamphetamine.

Hicks frequently visited a house at 875 Ruby Ave in Kansas City, Kansas, including in close proximity to the buy on May 25, 2022. Investigators determined Ernest Lucas lived at 875 Ruby. ATF put up an elevated security (pole) camera that allowed investigators to observe the street outside of 875 Ruby Ave on May, 11, 2022. ATF observed individuals engaged in drug trafficking outside the house on a daily basis.

ATF observed two cars, a Ford F-550 and a Gold Chevy Equinox arriving and parking outside of 875 Ruby on a consistent basis. The cars appeared to be occupied by the same two individuals. ATF found the identity of one of the individuals to be Abraham Gallegos. Utilizing various surveillance methods, ATF determined the F-550 and the Equinox were supplying Ernest Lucas with methamphetamine at 875 Ruby Ave. The individuals driving these cars were seen going directly from 875 Ruby to 3321 Mersington Ave, Kansas City, Missouri. The investigation revealed this house was a likely methamphetamine stash house. The drivers of these cars were observed on the pole camera almost daily at Lucas's house, sometimes twice a day. ATF observed, utilizing visual surveillance and by monitoring the vehicle tracker information, that they would drive from their house to the house on Mersington, drive directly to Lucas's house, and leave shortly after. ATF began conducting surveillance on the house located at 3321 Mersington Ave in KCMO. It appeared both males primarily lived at the house on 65th street.

On July 6, 2022, ATF executed a search warrant at 875 Ruby Ave, Lucas's house. Investigators located 12 firearms, ammunition, over $11,000 in cash, and approximately 274 grams of methamphetamine in various places in the house. Investigators also seized Lucas's cell phone. Also on July 6, 2022, investigators searched 3321 Mersington Ave. and found approximately 102 pounds of methamphetamine, eight firearms, electronic scales and other drug paraphernalia in the house. It did not appear anyone was living in the house. Investigators also seized Lucas's cell phone. The firearms listed in paragraph 9, below, were seized during the execution of search warrants in this investigation.

Investigators downloaded and extracted Lucas's cell phone. They noted some numbers using a 785, or Topeka, area code. ATF also reviewed pole camera footage and noted several instances where vehicles carrying Topeka license plates were captured outside of 875 Ruby Ave. In searching Lucas's phone, investigators identified a Topeka area phone number having drug related conversations with Lucas. ATF began matching the timing of the conversations with the pole camera footage from 875 Ruby. On June 19, 2022, a 785 phone number ending in 7834 messaged Lucas that he "just hit the block" and then agents observed on the recorded pole camera

footage a White BMW with Topeka plates arrive at 875 Ruby three minutes later. The BMW was driven by a white man. That white man met with another white man who arrived at 875 Ruby in a Nissan just minutes before. The two men met with Lucas outside of 875 Ruby in an apparent drug deal. On July 1, 2022, the user of the phone sent a selfie of him holding a stack of cash. He was identified as Spencer Allen. Investigators determined that Allen is friends with a known drug dealer named Jason "Country" Smith. Smith's known phone number was saved as a contact in Lucas's phone. There was another number saved in Lucas's phone as "Usa", also believed to belong to Smith. ATF began matching the timing of conversations from both phone numbers with the pole camera footage from 875 Ruby. Smith was observed on the pole camera footage outside of Ruby on several occasions using different vehicles. Investigators determined Lucas was selling methamphetamine to both Smith and Allen at and outside of 875 Ruby Ave.

Ernest Lucas admits that he participated in a methamphetamine trafficking conspiracy. Lucas admits that he is responsible for distributing and possessing with the intent to distribute more than fifty grams of methamphetamine in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(viii).

3. **Proposed Rule 11(c)(1)(C) Sentence.** The parties propose, as an appropriate disposition of the case:

(a) 300 months in prison on Count 1, 21 U.S.C. § 846;

(b) 5 years of supervised release;

(c) no fine; and

(d) the mandatory special assessment of $100.00.

The parties seek this binding plea agreement as an appropriate disposition of the case, because if the Court permits itself to be bound by the proposed sentence, it brings certainty to the sentencing process; it assures that the defendant and the government will benefit from the bargain they have struck; it serves the interests of justice; and it assures a sentence consistent with the sentencing factors of 18 U.S.C. § 3553(a). If the Court does not agree with the sentence, the defendant and United States may be restored to the positions they maintained prior to reaching this plea Agreement. This plea agreement centers on the defendant's agreement to enter his guilty plea as soon as the Court's schedule permits, thereby preserving valuable Court, prosecution, defense, United States Probation Office, United States Marshals' Service and other law enforcement resources.

4.     **Application of the Sentencing Guidelines.** The parties are of the belief that the proposed sentence does not offend the advisory sentencing guidelines. Because this proposed sentence is sought pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the parties are not requesting imposition of an advisory guideline sentence.

5.     **Government's Agreements.** In return for the defendant's plea of guilty as set forth herein, the United States agrees to dismiss the remaining counts of the Third Superseding Indictment at the time of sentencing, and agrees to not file any additional charges against the defendant arising out of the facts forming the basis for the present Indictment. Specifically, the United States will dismiss Counts 9 and 10 of the Third Superseding Indictment (Doc. 76).

6.     **Consequences for Violating the Plea Agreement.** The United States' obligations under this plea agreement are contingent upon the defendant's continuing to manifest an acceptance of responsibility. If the defendant denies or gives conflicting statements as to his involvement, falsely denies or frivolously contests relevant conduct the Court determines to be true, willfully obstructs or impedes the administration of justice, as defined by U.S.S.G. § 3C1.1 (or willfully attempts to do so), or has engaged in additional criminal conduct, the United States reserves the right to petition the Court for a hearing to determine if he has breached this plea agreement.

If the Court finds by a preponderance of the evidence that the defendant (1) has breached or violated this plea agreement; (2) has willfully obstructed or impeded the administration of justice, as defined by U.S.S.G. § 3C1.1 (or willfully attempted to do so); (3) has engaged in additional criminal conduct; or (4) has otherwise failed to adhere to this plea agreement's terms, this plea agreement will be deemed null and void, and the United States may pursue any additional charges arising from the criminal activity under investigation, as well as any charges for any perjury, false statement, or obstruction of justice that may have occurred.

If the Court finds the defendant has violated this plea agreement, he understands and agrees that all statements he made, any testimony he gave before a grand jury or any tribunal, or any leads from such statements or testimony, shall be admissible against him in any and all criminal proceedings. The defendant waives any rights which might be asserted under the United States Constitution, any statute, Federal Rule of Criminal Procedure 11(f), Federal Rule of Evidence 410, or any other federal rule that pertains to the admissibility of any statements he made subsequent to this plea agreement.

7. **Whether to Accept the Proposed Plea Agreement and Sentence is Up to the Court.** The Court has no obligation to accept the proposed plea agreement and sentence. It is solely within the Court's discretion whether to accept the proposed binding plea agreement as an appropriate disposition of the case.

8. **Withdrawal of Plea Permitted Only if the Court Does Not Accept the Plea Agreement and Proposed Sentence.** If the Court agrees to be bound by the proposed plea agreement and sentence, the parties shall be bound by all the terms of the proposed plea agreement and the defendant will not be permitted to withdraw his guilty plea. If the Court announces that it will NOT be bound by the proposed plea agreement, the parties agree that at that time either party may withdraw the proposed plea agreement, and if either does so, then all parties will be restored to the positions they were in prior to the entry of the defendant's plea. If neither party elects to withdraw the proposed plea agreement at the time the Court announces that it will not be bound, and before the Court proceeds with sentencing, then the parties shall be bound by all the terms of the proposed plea agreement and the defendant will not be permitted to withdraw his guilty plea.

9. **Forfeiture of Assets.** The defendant knowingly and voluntarily agrees and consents:

The defendant agrees to the forfeiture of the following property to the United States:

5

    A. Glock Model 43X with serial number BPYM099;
    B. PW Arms, AR Twelve, 12-gauge shotgun with serial number YD-20-07080;
    C. Glock Model 21, .45 caliber pistol with serial number BAHR214;
    D. Taurus, model G3C 9mm pistol with serial number ACB539028;
    E. Taurus, model Judge .45 LC/410 gauge revolver with serial number ET458561;
    F. H&R model 088, 12-gauge with serial number AY560190;
    G. DPMS model LR-308 308 caliber rifle with serial number 39644K;
    H. Anderson Manufacturing model AM-15 multi caliber rifle with serial number 21300799;
    I. unknown bolt action rifle, model M24/47 with serial number D9669;
    J. a Mosin-Nagant PW Arms model M91/30, 7.62x54R rifle with serial number 031260;
    K. Zastava CAI, model PAP M9 2PV 7.62x39 rifle with serial number M92PV001122;
    L. Private made firearm, AR type rifle with Daniel Defense parts (no serial number);
    M. Smith & Wesson handgun SD9 with serial number FCY8488;
    N. Smith & Wesson handgun M&P40 with serial number DUP7705;
    O. CANIK handgun TP-9SF ELITE with serial number 21BH15214;
    P. SCCY handgun CPX-1 with serial number C138075;
    Q. 556 caliber pistol with no serial number, unknown manufacturer and unknown model;
    R. ROMARM/CUGIR Draco 762 caliber with serial number DC-6422-10RO;
    S. HS Produkt handgun, XD45 with serial number XD706029;
    T. DPMS, model A-15, .556 caliber, rifle with serial number FFA053233; and
    U. All accompanying ammunition.

The defendant agrees that this property was property used to facilitate; and/or is property that constitutes proceeds the defendant obtained, directly or indirectly from the commission of Count 1. The defendant knowingly and voluntarily waives his right to a jury trial regarding the forfeiture of property, and voluntarily waives all constitutional, legal and equitable defenses regarding the forfeiture of property and withdraws any administrative claim or petition for remission regarding the property. The defendant acknowledges and agrees that the forfeiture of this property shall not be deemed an alteration of his sentence or this agreement, and shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon him in addition to forfeiture. Additionally, the defendant agrees to the immediate entry of the Preliminary Order of Forfeiture, and agrees to sign any and all documents

necessary to effectuate the forfeiture and transfer of his interest and possession of the property identified in this paragraph to the United States prior to the imposition of sentence.

10. **Payment of Special Assessment.** The defendant understands that a mandatory special assessment of $100.00 per count of conviction will be entered against him at the time of sentencing. The defendant agrees to deliver to the Clerk of the United States District Court payment in the appropriate amount no later than the day of sentencing. The defendant has the burden of establishing an inability to pay the required special assessment. The parties acknowledge that if the Court finds the defendant is without resources to pay the special assessment at the time of sentencing, the Court may allow payment during his period of incarceration.

11. **Waiver of Appeal and Collateral Attack.** The defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, his conviction, or the components of the sentence to be imposed herein, as well as the length and conditions of supervised release. The defendant is aware that 18 U.S.C. § 3742 affords him the right to appeal the conviction and sentence imposed. By entering into this agreement, the defendant knowingly waives any right to appeal a sentence imposed in accordance with the sentence recommended by the parties under Rule 11(c)(1)(C). The defendant also waives any right to challenge his sentence, or the manner in which it was determined, or otherwise attempt to modify or change his sentence, in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255 (except as limited by *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001)), or a motion brought under Federal Rule of Civil Procedure 60(b). In other words, the defendant waives the right to appeal the sentence imposed in this case, except to the extent, if any, the Court imposes a sentence in excess of the sentence recommended by the parties under Rule 11(c)(1)(C). However, if the United States exercises its right to appeal the sentence

imposed, as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may appeal the sentence received, as authorized by 18 U.S.C. § 3742(a). Notwithstanding the foregoing waivers, the parties understand that the defendant in no way waives any subsequent claims with regards to ineffective assistance of counsel or prosecutorial misconduct.

12. **FOIA and Privacy Act Waiver.** The defendant waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552. The defendant further waives any rights conferred under the Privacy Act of 1974, 5 U.S.C. § 552a, to prevent or object to the disclosure of records or materials pertaining to this case.

13. **Full Disclosure by United States.** The defendant understands the United States will provide to the Court and the United States Probation Office all information it deems relevant to determining the appropriate sentence in this case. This may include information concerning his background, character, and conduct, including the entirety of his criminal activities. The defendant understands these disclosures are not limited to the count to which he is pleading guilty. The United States may respond to comments he or his attorney makes, or to positions he or his attorney takes, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The defendant also has the right to provide information concerning the offense and to make recommendations to the Court and the United States Probation Office.

14. **Parties to the Agreement.** The defendant understands this plea agreement binds only him and the United States Attorney for the District of Kansas, and that it does not bind any other federal, state, or local prosecution authority.

15. **Voluntariness of Guilty Plea.** The defendant has had sufficient time to discuss this case, the evidence, and this Plea Agreement with his attorney and he is fully satisfied with the advice and representation his attorney provided. Further, the defendant acknowledges that he has read the Plea Agreement, understands it, and agrees it is true and accurate and not the result of any threats, duress or coercion. The defendant further understands that this Plea Agreement supersedes any and all other agreements or negotiations between the parties, and unless subsequently supplemented in writing with the joint approval of the parties, this Plea Agreement embodies each and every term of the agreement between the parties. The defendant acknowledges that he is entering into this Plea Agreement and is pleading guilty because he is guilty. He further acknowledges that he is entering his guilty plea freely, voluntarily, and knowingly.

_____          Date: 2/17/26
MICHELLE MCFARLANE
Assistant United States Attorney
Office of United States Attorney - Kansas City
500 State Avenue, Suite 360
Kansas City, KS 66101
913-551-6730
Fax: 913-551-6541
Michelle.McFarlane@usdoj.gov


s/Larry Fadler                              Date:   2/13/26
LARRY FADLER
Supervisory Assistant U.S. Attorney
500 State Avenue, Suite 360
Kansas City, Kansas 66101
913-551-6730
913-551-6541 (fax)
Larry.Fadler@usdoj.gov
Kan. S. Ct. No. 30243


s/Ryan Huschka                              Date:   2/13/26
RYAN HUSCHKA
Criminal Chief

9

_____   Date: 2/17/2026
ERNEST LUCAS
Defendant

_____   Date: 2/17/2026
Paul Anthony Hood
Paul Hood Attorney at Law, LLC
104 W. 9th Street, Suite 404
Kansas City, MO 64105
541-513-7545
Email: paul@paulhoodlaw.com
Counsel for defendant

10